UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MERIDIAN SECURITY
INSURANCE COMPANY,

        Plaintiff,

vs.

Case No. 05-CV-73354

HON. GEORGE CARAM STEEH

CHURCH MUTUAL
INSURANCE COMPANY,

        Defendant.
_____/

ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT [# 12] AND DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [# 15]

This is a declaratory action arising from a motor vehicle accident. Plaintiff Meridian Security Insurance Co. ("Meridian") seeks reimbursement of monies paid by it in settlement of the underlying lawsuits, while defendant Church Mutual Insurance Co. ("Church Mutual") seeks reimbursement of its settlement costs. For the reasons stated below, plaintiff's motion for summary judgment is GRANTED IN PART and defendant's motion for summary judgment is GRANTED IN PART.

FACTUAL BACKGROUND

In July of 2000, the Warren Hmong Church ("Church") Youth Group attended a church youth conference in Minnesota. Ger Kue (Mr. Kue) was the Church Youth director at the time of the conference. Mr. Kue's responsibilities consisted of organizing the trip and providing transportation to and from the conference. The trip was financed by the Church Governing Board who gave Mr. Kue a $500 budget, as well as additional

funds which were raised by a Church-sponsored car wash and food sale.  A youth conference flyer and application were also given to all youth members at the Church.  The Church Chairman Nhia Long Herr was required to sign each application which authorized the youth members to attend the conference through the Church.

Ger Kue rented two 15-passenger vans and a minivan from McDonald Rent-a-Car for the purpose of transporting the members to the youth conference in Minnesota.  Mr. Kue designated his wife Amanda Kue (Mrs. Kue), as a driver of one of the 15-passenger vans.  Mrs. Kue was also a Sunday School teacher at the Church and was to be the chaperone for the young women attending the conference.

The accident occurred on July 31, 2000, when Mrs. Kue was driving the van down Interstate 80 through Indiana.  For unknown reasons, Mrs. Kue lost control of the vehicle and struck the median wall turning the vehicle on its side.  Both Mrs. Kue and a passenger, Ganou Yang, were thrown from the vehicle and died as a result of their injuries.  None of the other  two vehicles that were traveling with the van driven by Mrs. Kue were in close enough proximity to witness the accident.  The other passengers in Mrs. Kue's van were asleep at the time of the accident and therefore did not witness the occurrence either.

A wrongful death action was filed shortly after the accident by the Ganou Yang Estate in Wayne County.  Six other passengers who allegedly sustained injuries also filed claims in Wayne County.  These cases were consolidated since they contained the same three defendants:  The Estate of Amanda Kue, McDonald Rent-a-Car, and Warren Hmong Alliance Church.  The underlying claims were brought based on Mrs.

Kue's negligent operation of a motor vehicle, but all three cases involved claims for negligent entrustment and supervision and vicarious liability against the Church.

Both Mr. Kue and the Church had insurance policies in effect at the time of the accident.  Mr. Kue had an automobile insurance policy issued by plaintiff Meridian, with policy limits of $100,000/$300,000.  The Church had an applicable policy issued by defendant Church Mutual, with policy limits of $1,000,000/$3,000,000.

Meridian defended the Estate of Amanda Kue under Ger Kue's policy.  Meridian paid settlements in the amount of $100,000 in the wrongful death claim by the Estate of Ganou Yang and $72,000 in the settlement of the six bodily injury claims, totaling $172,000.  Church Mutual did not defend the Estate of Amanda Kue, nor did they pay any of her settlements.  However, none of the claims of vicarious liability against the Church were dismissed prior to the settlements.

Church Mutual defended the Church in the underlying lawsuits.  Church Mutual paid settlements in the amount of $815,000 for the wrongful death claim and $72,000 for the bodily injury claims, totaling $887,000, on behalf of the Church only.

Meridian filed a declaratory judgment in Wayne County Circuit Court seeking reimbursement from Church Mutual of a portion of the settlements paid out in the underlying lawsuits.  Church Mutual then removed the case to this Court based on diversity jurisdiction and filed a counterclaim seeking reimbursement from Meridian.

## STANDARD FOR SUMMARY JUDGMENT

Federal Rule of Civil Procedure 56(c) empowers the court to render summary judgment "forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine

issue as to any material fact and that the moving party is entitled to judgment as a matter of law." See Redding v. St. Eward, 241 F.3d 530, 532 (6th Cir. 2001). The Supreme Court has affirmed the court's use of summary judgment as an integral part of the fair and efficient administration of justice. The procedure is not a disfavored procedural shortcut. Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986); see also Cox v. Kentucky Dept. of Transp., 53 F.3d 146, 149 (6th Cir. 1995).

The standard for determining whether summary judgment is appropriate is "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" Amway Distributors Benefits Ass'n v. Northfield Ins. Co., 323 F.3d 386, 390 (6th Cir. 2003) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986)). The evidence and all reasonable inferences must be construed in the light most favorable to the non-moving party. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Redding, 241 F.3d at 532 (6th Cir. 2001). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (emphasis in original); see also National Satellite Sports, Inc. v. Eliadis, Inc., 253 F.3d 900, 907 (6th Cir. 2001).

If the movant establishes by use of the material specified in Rule 56(c) that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law, the opposing party must come forward with "specific facts showing that there is a genuine issue for trial." First Nat'l Bank v. Cities Serv. Co., 391 U.S. 253, 270 (1968);

see also McLean v. 988011 Ontario, Ltd., 224 F.3d 797, 800 (6th Cir. 2000).  Mere allegations or denials in the non-movant's pleadings will not meet this burden, nor will a mere scintilla of evidence supporting the non-moving party.  Anderson, 477 U.S. at 248, 252.  Rather, there must be evidence on which a jury could reasonably find for the non-movant.  McLean, 224 F.3d at 800 (citing Anderson, 477 U.S. at 252).

## ANALYSIS

I.  Admissibility of Exhibits in this Case

Depositions taken in the underlying lawsuits have been offered as exhibits in this action by plaintiff Meridian.  Church Mutual objects on the basis that the depositions do not meet the standards for admissibility required by court rule.  Federal Rule of Civil Procedure 32(a)(4) provides that a deposition taken in another proceeding and submitted in a subsequent proceeding in support of a motion is permissible where the actions involve the same subject matter and the same parties, or their representatives or successors in interest.

While Meridian and Church Mutual were not parties in the underlying lawsuits, the Estate of Amanda Kue and the Church were party defendants and were represented by the same counsel as in this case.  Furthermore, each insurance company is subrogated to the respective rights of its insured and occupies its shoes for purposes of this declaratory action.  The insurance companies are successors in interest of the Estate of Mrs. Kue and the Church.

The deposition testimony fully addressed the circumstances of Mr. Kue renting the van and his authorization to do so by the Church, his authorization to designate Mrs. Kue as a driver, and whether Mrs. Kue and he were employees, volunteers or agents of

5

the Church.  These amount to all of the pertinent concerns affecting the coverage issued in this case.  In the pretrial scheduling conference, the extensive discovery that had been undertaken in the underlying cases was discussed.  The parties agreed that little or no discovery would be necessary.  The parties clearly contemplated the use of the depositions from the underlying actions in this case.  Both sides have acknowledged sufficient evidence has been received for the court to rule on the issue presented as a matter of law.   Rule 32(a)(4) permits the use of the depositions in this case.

II. <u>The Estate of Amanda Kue is an Insured Under the Church Mutual General Liability Policy</u>

Church Mutual issued policy number 0159297-02-660384 to the Church ("Church Mutual Policy").  The Church Mutual Policy has an automobile exclusion which provides no coverage for automobiles, except under the provision of the "Hired and Nonowned Automobile Liability Coverage Excess Insurance" endorsement.  This endorsement provides:

> C.  WHO IS AN INSURED
>
> 1.      Each of the following is an insured under this insurance to the extent set forth below:
>
> \* \* \*
>
> c.      Any person who is a "volunteer" for you is an insured, but only while using an "automobile" with your express knowledge and authorization, in the course of your business, and within the scope of their duties for you.
>
> d.      Any person while using a "hired automobile" is an insured (except while using an "automobile" owned by such person) provided the actual use of the "automobile" is with your permission.
>
> F.  DEFINITIONS

1. "Automobile" means a land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment. But "automobile" does not include "mobile equipment".

\* \* \*

4. "Hired automobile" means any "automobile":
   a. Loaned to you;
   b. Leased or rented by you or your employee;
   c. Used under contract by you;
   in the course of your business.

\* \* \*

11. "Volunteer" means any person, other than your officers, clergy or employees, while using an "automobile" with your express knowledge and authorization, in the course of your business, and within the scope of their duties for you.

The vehicle involved in this accident was a 15-passenger van that was rented by Ger Kue in his own name, for the purpose of transporting the Church Youth Group to a conference in Minnesota. The trip was a Church sponsored event. Mr. Kue was Youth Director, which was a voluntary and unpaid position. Mr. Kue was elected to his position by the Church membership. While Mr. Kue was not an employee of the Church, he was an elected officer, and therefore authorized to act on behalf of the Church in order to carry out his duties.

A corporation or other legal entity can only act through its agents. International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945). The Chairman of the Church Governing Board testified that the Church acts through its Governing Board and members. (Nhia Long Herr dep. at 25-26, In re Estate of Canou Yang). Mr. Kue was elected by the membership and authorized by the Governing Board to carry out his duties as Youth Director, which included organizing transportation to the youth conference and designating drivers for the rental van. (Response to Request for

7

Admission No. 28, Yang v. Estate of Amanda Kue).  The Church admitted in its Answer to Complaint that Mr. Kue was an agent of the Warren Hmong Alliance Church.

There can be no dispute that Mr. Kue was acting on behalf of the Church, in the course of his Church duties, during a Church sponsored activity, when he rented the vehicle and gave his wife Amanda Kue permission and consent to drive the rental vehicle.  The Church is a legal entity that can only act through a person authorized to act on its behalf.  The term "you" in the Church Mutual Policy necessarily includes authorized agents and representatives of the Church regardless of whether they are employees.  Mr. Kue was an authorized representative of the Church, and he rented the van for for a church outing as contemplated in section F.4.b of the Church Mutual Policy.

Mrs. Kue is covered under the Church Mutual Policy in two ways.  First, she fits the definition of a volunteer as a driver and chaperone at the youth conference.  A volunteer is an insured while using an automobile with the express knowledge and authorization of the Church, which Mr. Kue provided in this case.  Clearly, Mrs. Kue was driving the van in the course of Church business and within the scope of her volunteer duties at the Church.  (Hired and Nonowned Automobile Liability Coverage Excess Insurance, C.1.c.).

Mrs. Kue is also an insured under the Church Mutual Policy because she is a person using a "hired automobile" with the permission of the Church.  Mr. Kue provided the necessary permission, and the van was rented by Mr. Kue, to carry out Church business.  It could be concluded that the church leased the van via its authorized agent, Mr. Kue; alternatively, it would be said the van was rented by Mr. Kue and "loaned" to

8

the Church.  (Hired and Nonowned Automobile Liability Coverage Excess Insurance, C.1.d.).

In short, even if the church is not viewed as "lessee" or "borrower" of the van, the Church Mutual Policy must be read to cover Mrs. Kue as a "volunteer" pursuant to §C.1.c.

There is much discussion by Church Mutual regarding whether Mr. Kue was an employee of the Church.  Michigan law relies on workers compensation analysis to determine if someone is an employee.  Reed v. Yackell, 473 Mich. 520 (2005). Meridian agrees that Mr. Kue was not an employee of the Church, so this issue is moot.

### III.  The Church is an Insured Under Meridian Policy

The court must construe the Meridian Policy to resolve plaintiff's claim that the Church is not an insured pursuant to its provision.

The Meridian Policy provides that an "insured" includes:

> For any auto or "trailer," other than "your covered auto," any other person or organization but only with respect to legal responsibility for acts or omissions of you or any "family member" for whom coverage is afforded under this Part.  This provision (B.4.) applies only if the person or organization does not own or hire the auto or "trailer."

Part A. Liability Coverage, B.4.  Church Mutual contends that the Church was an insured under this provision of the Meridian Policy because the Church had legal responsibility for the acts of Mrs. Kue.  The dispute focuses on the second sentence of provision B.4. of the Meridian Policy, which states that "This provision (B.4.) applies only if the person or organization does not own or hire the auto or 'trailer.'"

Mrs. Kue obviously did not own or hire the van.  Therefore, the issue is whether the Church "hired" the auto for purposes of the Meridian Policy.  The rental agreements

for the autos list Ger Kue as the renter, and nowhere indicate that the autos were being leased in the name of or on behalf of the Church.  Meridian's counsel even argued that the autos could be seen as rented by Mr. Kue and "loaned" to the Church for purposes of finding Mrs. Kue to be an insured under the Church Policy.  This argument is consistent with finding that the Church did "not own or hire the auto" and is therefore an insured under the Meridian policy.  The Meridian Policy does not define the term "hire", so the Court uses the ordinary meaning of the word.  The rental agreement itself does not give any indication that the van was hired by the Church or for Church use.  The Court finds that the Church is an insured under the Meridian Policy.  Part A. Liability Coverage, B.4.

III.  Interplay Between the Two Policies, Excess Insurance Provisions

Because Mrs. Kue and the Church are insureds under both the Meridian and Church Mutual policies, the Court must determine if either insurer is entitled to reimbursement of its share of the settlement paid in the underlying lawsuits.

A. Legal Standard

There are three layers or tiers of insurance coverage which determine the priority for payment: primary coverage; excess "other insurance" coverage; and "true excess" or umbrella coverage.  Bosco v. Bauermeister, 456 Mich. 279 (1997).  Within a specific tier or layer of coverage, liability should be prorated based on the total limits of available coverage within that tier of priority.  Once coverage within that tier is exhausted, the next tier of coverage will apply.  Id. at 281-82, 304.

Regarding the second tier of coverage, the majority view in Michigan requires an analysis of the respective "other insurance" provisions to determine the parties' intent and reconcile the provisions. The Michigan Supreme Court has recognized three categories of "other insurance" clauses: (1) pro rata clauses, which purport to limit the insurer's liability to a proportionate percentage of all insurance covering the event; (2) escape or no-liability clauses, which provide that there shall be no liability if the risk is covered by other insurance; and (3) excess clauses, which limit the insurer's liability to the amount of loss in excess of the coverage provided by the other insurance. St. Paul Fire & Marine Ins. Co. v. American Home Assurance Co., 444 Mich. 560 (1944).

"[T]rue excess coverage occurs where a single insured has two policies covering the same loss, but one policy is written with the expectation that 'the primary will conduct all of the investigation, negotiation and defense of claims until its limits are exhausted.'" Bosco v. Bauermeister, 456 Mich. 279, 295 (1997) (quoting from Frankenmuth Mutual Ins. Co. v. Continental Ins. Co., 450 Mich. 429, 435 n.4 (1995)). A typical example of true excess insurance is an umbrella policy, where liability only attaches once the limits of all underlying insurance have been exhausted. Bosco, 456 Mich. at 295. The Michigan Supreme Court describes a primary policy with an excess insurance clause as follows: "The defining character of a 'coincidental excess' policy is that liability attaches immediately upon the occurrence of the insured event." Id. at 295-96.

    B. Policies at Issue

The Meridian Policy provides primary coverage, but includes an "other insurance" provision:

> If there is other applicable liability insurance we will pay only our share of the loss. Our share is the proportion that our limit of liability bears to the total of all applicable limits. However, any insurance we provide for a vehicle you do not own shall be excess over any other collectible insurance.

(Part A - Liability Coverage, Other Insurance). In general, this provision is a pro rata clause. However, as to a non-owned vehicle, the language of the Meridian provision is an excess clause.

The Church Mutual Policy is also a primary policy with an "other insurance" provision because liability is triggered immediately upon the circumstances of the accident. The Church Mutual "other insurance" provision provides:

> E.   CONDITIONS
>
>   4.   Other Insurance
>
>   a.   If other valid and collectible insurance is available to the insured for a loss we cover under this Coverage part, our obligations are limited as follows:
>
>   (1)   This insurance is excess over any of the other insurance, whether primary, excess, contingent or on any other basis.
>               *   *   *
> We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations Page of this Coverage Part.

Subsection (a) begins by limiting coverage when other insurance is available to the insured, and subparagraph (1) makes it clear that the Church Mutual Policy is meant to be excess over the other available insurance, whether primary, excess, contingent or on any other basis. This section describes excess insurance. Any remaining loss is to be shared pro rata. The language of the Church Mutual "other insurance" provision describes coincidental excess insurance.

While it is true that the Church Mutual Policy has the word "excess" in its title, it is the language and intent of the policy and not the title that controls. Like the Meridian Policy, the Church Mutual Policy is a primary policy with an excess insurance clause. The result is that the loss covered by Meridian must be shared pro-rata by Church Mutual.

The Meridian policy limits are $100,000/$300,000, and the Church Mutual limits are $1,000,000/$3,000,000. Meridian's pro rata obligation is 9% (100,000 ÷ 1,100,000 = .09 x 100% = 9%) and Church Mutual's obligation is 91% (1,000,000 ÷ 1,100,000 = .91 x 100% = 91%). These percentages are applied to the settlements paid by Meridian and Church Mutual ($887,000 + $172,000 = $1,059,000). Meridian's pro rata share is (.09 x $1,059,000) $95,310 and Church Mutual's pro rata share is (.91 x $1,059,000) $963,690. Church Mutual owes $963,690 and paid $887,000, so it owes the difference, or $76,690, to Meridian.

IV. <u>Defendant's Other Arguments</u>

    A. <u>Plaintiff has Represented that it is Primary</u>

Church Mutual argues that when Meridian paid the $100,000 per person limit in the Estate of Ganou Yang death case, Meridian made the equivalent of a representation that the Meridian policy was primary. Church Mutual argues that equitable estoppel prevents Meridian from arguing otherwise now. The elements of equitable estoppel are:

> (1) a party, by representations, admissions, or silence, intentionally or negligently induces another party to believe facts, (2) the other party justifiably relies and acts on that belief, and (3) the other party will be prejudiced if the first party is allowed to deny the existence of those facts.

<u>Michigan Nat'l Bank v. St. Paul Ins. Co.</u>, 223 Mich. App. 19, 23 (1997).

Church Mutual argues that by paying the per person limit in settlement, Meridian made a representation with respect to the applicability of its $100,000 per person limit. However, as Meridian points out, Church Mutual was not a party to the settlement, and Meridian did not make any representations to Church Mutual to the effect that its policy was primary.

The doctrine of promissory estoppel states:

> A promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise.

State Bank of Standish v. Curry, 442 Mich. 76, 83 (1993).  Each insurer separately negotiated the respective settlements in the underlying lawsuits.  Again, there is no evidence that Meridian made any promises to Church Mutual to induce action on its part.

B.  Plaintiff's Policy is a "Specific" Policy and Therefore Primary

Church Mutual argues that the "specific" automobile policy issued by Meridian should always be paid before the "package" policy insuring general liability issued by Church Mutual.  Schlussel v. Commercial Casualty, 237 Mich. 182 (1927).  Schlussel involved two separate policies which provided coverage for burglary.  One provided "blanket" coverage for the contents of the entire dwelling and the other provided coverage for the contents of a safe within the dwelling.  Both policies contained competing "pro rata" other insurance clauses.  The Court held the blanket policy coverage would first be applied to items outside the safe, and then any remaining coverage would be prorated with the "safe policy" coverage.

In the present case, where there is no loss other than that resulting from the automobile accident, <u>Schlussel</u> would support the Court's ruling that the loss should be shared pro rata.

C. <u>Defendant is Entitled to Indemnity from Plaintiff</u>

Church Mutual argues that the Church is entitled to indemnity from the Estate of Amanda Kue as one who is passively liable and only vicariously liable for the acts of another. See <u>North Community Healthcare, Inc. v. Telford</u>, 219 Mich. App. 225, 229 (1996). This argument assumes that Mrs. Kue was an employee of the Church, which the Court has already found not to be true.

D. <u>Plaintiff Paid as a Volunteer</u>

Church Mutual contends that Meridian is not entitled to reimbursement because it paid as a volunteer without any legal duty or obligation. <u>DAIIE v. Detroit Mutual</u>, 337 Mich. 50 (1953). While the trial court in <u>DAIIE</u> held that the plaintiff insurer was a "volunteer" and therefore precluded from recovering a proportionate share of the judgment it paid from the defendant, the Michigan Supreme Court reversed, holding that the plaintiff insurer was not a volunteer. The Court held that the plaintiff insurer paid the judgment under the terms of its contract and became subrogated to the rights of the insured, who was also covered under a policy issued by the defendant insurer. The Court ruled that the plaintiff insurer did not voluntarily pay the debt of the defendant insurance company and had a right to bring an action to recover the portion of the judgment that should have been paid by the defendant insurance company. The <u>DAIIE</u> case does not support Church Mutual's position and, if anything, supports Meridian's claim for reimbursement.

CONCLUSION

For the reasons stated above, Meridian's motion for summary judgment is GRANTED in part and Church Mutual's motion for summary judgment is GRANTED in part. Church Mutual is obligated to reimburse Meridian for its pro rata share of the settlement paid on behalf of the Estate of Amanda Kue and the Church in the underlying suits in the amount of $76,690.

S/George Caram Steeh
GEORGE CARAM STEEH
UNITED STATES DISTRICT JUDGE

Dated: May 8, 2006

CERTIFICATE OF SERVICE

Copies of this Order were served on the attorneys of record on May 8, 2006, by electronic and/or ordinary mail.

S/Josephine Chaffee
Secretary/Deputy Clerk
